UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDY A. WITT, M.D., *Plaintiff*, | ) ) ) | 3:20-CV-1570 (SVN) |
| v. | ) ) | |
| RYAN J. ARMSTRONG, *Defendant*. | ) ) | August 2, 2022 |

## RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Wendy Witt ("Plaintiff") brings this action alleging that Defendant Ryan Armstrong ("Defendant"), a Stonington, Connecticut police officer, violated her rights by wrongfully arresting her, instead of her then-boyfriend, after Plaintiff called the police complaining of domestic abuse. Although Plaintiff's complaint contains no specified claims, Plaintiff clarified at oral argument that she is pursuing claims for violation of her Fourth Amendment rights to be free from false arrest, free from the use of unreasonable force, and free from malicious prosecution.[1]

Defendant presently seeks summary judgment on the entire complaint, contending that there are no material facts in dispute and that the undisputed facts establish that all of his actions were reasonable in light of the circumstances at the time of the arrest. Thus, he argues that his actions did not constitute a violation of Plaintiff's constitutional rights as a matter of law. Defendant also argues that, if Plaintiff's constitutional rights were violated, he is entitled to a finding of qualified immunity, as his actions were objectively reasonable under the circumstances.

---

[1] Due to the complaint's lack of clarity, Defendant argues that he should be granted summary judgment on Plaintiff's claim for defamation, to the extent a defamation claim is asserted. As Plaintiff has confirmed she raises no such claim, the Court will not address this argument further.

Plaintiff counters that Defendant failed to follow the mandates of Conn. Gen. Stat. § 46b-38b(b), which pertains to the investigation of family violence crimes, so Defendant lacked probable cause to arrest her.  Further, Plaintiff contends there is a dispute of material fact over whether the force employed in the present case was reasonable under the circumstances.  Thus, Plaintiff argues, summary judgment must be denied.

For the reasons set forth below, the Court agrees with Defendant and GRANTS Defendant's motion for summary judgment in full.

I.      FACTUAL BACKGROUND[2]

Plaintiff is a sixty-eight-year-old physician who owns, and resides in, a single-family home in Stonington, Connecticut. ECF No. 1 ¶ 3; ECF No. 22-1 ¶ 8.  On May 24, 2019, Plaintiff was at home when she and her live-in boyfriend began arguing. ECF No. 22-3 at 21:15–22:14. During this incident, Plaintiff called 911 to report a domestic issue.  ECF No. 20-2 ¶ 1. Approximately five minutes later, two police officers, Defendant and another officer, responded to Plaintiff's home.  *Id.* ¶ 10.

Upon their arrival, Plaintiff let the officers into her home and began speaking to Defendant in her home's foyer.  *Id.* ¶ 11.  This conversation lasted approximately fifteen to twenty minutes and involved Plaintiff explaining both the past and present situation between her and her boyfriend. *Id.* ¶ 12–14.  Specifically, Plaintiff informed Defendant that her boyfriend had a history of arrests and convictions, and that he was currently on probation for a prior domestic violence incident with Plaintiff.  *Id.* ¶ 14.  She further informed Defendant that earlier that evening, her boyfriend had blocked her exit from the kitchen and made her sit in a chair; when she got up to get a glass of

---

[2] The factual background is taken from Defendant's Local Rule 56(a)1 Statement of Facts (ECF No. 20-2), Plaintiff's Local Rule 56(a)2 Statement of Facts (ECF No. 22-1), and the evidence submitted in support thereof.  While Plaintiff and Defendant make several objections to the relevance of certain facts discussed herein, the basic facts are undisputed unless otherwise indicated above.

water, her boyfriend knocked the glass from her hand, causing it to shatter on the floor. *Id.* Plaintiff then informed Defendant that her boyfriend threatened to cut himself. *Id.*

After this conversation concluded, Defendant left Plaintiff in the foyer and went to speak to Plaintiff's boyfriend in the kitchen. *Id.* ¶ 15. Plaintiff was unable to hear the substance of the conversation because she remained in the foyer. *Id.* During this conversation, Defendant noticed drops of blood on Plaintiff's boyfriend's shirt. *Id.* ¶ 16. After noticing this, he asked what had happened and was told that Plaintiff had struck her boyfriend, causing a cut on the inside of his front upper lip. *Id.* ¶ 17. At this point, Plaintiff's boyfriend flipped his front lip upward to show Defendant the wound. *Id.* ¶ 18. After this conversation, which lasted approximately five to ten minutes, Defendant returned to the foyer to continue his conversation with Plaintiff. *Id.* ¶ 19.

Upon resuming his conversation with Plaintiff, Defendant told Plaintiff that he had observed blood on the floor in the kitchen and on her boyfriend's clothing, and that her boyfriend had said that she hit him. *Id.* ¶ 20. Defendant then asked Plaintiff if she had struck her boyfriend. *Id.* ¶ 21. She responded that she had not. *Id.* She then stated to Defendant: "you don't know who you're dealing with." *Id.* In her deposition, Plaintiff testified that that statement was meant to refer to her boyfriend, who was an "ex-con who is quite adept at staging all sorts of things," but she did not clarify that with Defendant at the time. ECF No. 20-3 at 38–39.

Defendant ultimately decided to place Plaintiff under arrest. *Id.* ¶ 22. In effectuating the arrest, he grabbed Plaintiff's left wrist, at which point Plaintiff attempted to pull her wrist away. *Id.* Plaintiff was unable to free her wrist from Defendant's grip. *Id.* ¶ 23. Defendant then turned Plaintiff around, bent her over at the waist onto a desk located in the foyer, and informed her that she was under arrest for resisting arrest. *Id.*

Defendant then handcuffed Plaintiff and walked her to his police cruiser, placed her in the back seat, fastened the seat belt, and left the scene. *Id.* ¶ 26. Though Plaintiff's complaint states that she was "roughly handcuffed," she never informed Defendant her handcuffs were too tight. *Id.* ¶ 24. Plaintiff claimed to have sustained bruising as a result of the handcuffs, which resolved in one to two weeks, and full body soreness resulting from the manner of the arrest. *Id.* ¶ 25; ECF No. 22-1 ¶ B-35. Plaintiff was placed in a holding cell at the police station, though it is unclear precisely how long she was in the cell. ECF No. 22-1 ¶ B-34. Plaintiff was subsequently charged with breach of peace, assault in the third degree, and interfering with an officer, but all charges were dismissed by the Superior Court on June 12, 2019. *Id.* ¶ B-7.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the moving party's burden to show there are no disputed material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by pointing out an absence of evidence to support the non-moving party's case. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). If the moving party demonstrates there are no disputed issues of material fact, the burden shifts to the non-moving party to rebut this showing through introduction of "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). When examining the record, "the court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). Thus,

"only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III. DISCUSSION

Plaintiff makes three independent claims under 42 U.S.C. § 1983 for violations of her Fourth Amendment rights to be free from (i) unlawful arrest, (ii) malicious prosecution, and (iii) the use of unreasonable force to affect an arrest. Plaintiff has failed to raise a genuine issue of disputed material fact, such that a reasonable jury could find in her favor on any of the claims.

### A. Plaintiff's Claims for False Arrest and Malicious Prosecution Fail as a Matter of Law

"Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). In order to succeed on a claim for false arrest under § 1983, "a plaintiff must establish: '(1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause.'" *Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 443 (D. Conn. 2013) (internal citations omitted). It has long been established that "a § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law." *Id.* A plaintiff in an action alleging malicious prosecution under Connecticut law must show "(1) the defendant initiated or continued

5

criminal proceedings against the plaintiff;" (2) "the criminal proceeding terminated in favor of the plaintiff;" (3) "the defendant acted without probable cause;" and (4) "the defendant acted with malice." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009). Additionally, Plaintiff must show "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000). As with false arrest, it is well established that "the existence of probable cause is a complete defense to a civil rights claim alleging . . . malicious prosecution." *Garcia v. Gasparri*, 193 F. Supp. 2d 445, 449 (D. Conn. 2002). Defendant argues here that Plaintiff cannot succeed on either her false arrest or malicious prosecution claims because Defendant had probable cause to arrest and charge her with the alleged crimes.[3]

Probable cause exists where "the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal citations omitted). This determination "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Importantly, "because the existence of probable cause depends on the probability, rather than the certainty, that criminal activity has occurred, the validity of an arrest does not require an ultimate finding of guilt." *Bourguignon v. Guinta*, 247 F. Supp. 2d 189, 193 (D. Conn.), *aff'd sub nom. Bourguignon v. Giunta*, 78 F. App'x 763 (2d Cir. 2003). Nor does an "officer's failure to investigate an arrestee's protestations of innocence" necessarily undermine the officer's

---

[3] Defendant makes no argument in his moving papers regarding the presence or absence of any other elements of either the malicious prosecution or false arrest claims. Thus, the Court makes no findings related to such other elements.

determination regarding the existence of probable cause. *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006). *See also Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (finding that a police officer had probable cause to arrest the plaintiff when a purported assault victim who was visibly injured told the officer that the plaintiff had assaulted him, despite the plaintiff's conflicting account).

While the presence of probable cause to arrest a suspect is a bar to both false arrest and malicious prosecution claims, there is one significant difference. A showing of probable cause to arrest for any single crime defeats a claim for false arrest, while a defendant must show probable cause for each crime for which the plaintiff was actually arrested in order to defeat a malicious prosecution claim. *Compare Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (for claims of false arrest, it is "not relevant whether probable cause existed with respect to each individual charge, or indeed, any charge actually invoked by the arresting officer at the time of the arrest"), *with D'Angelo v. Kirschner*, 288 F. App'x 724, 726–27 (2d Cir. 2008) ("a finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor").

Despite this difference, the question for the Court is the same for both counts: whether a reasonable juror could conclude that Defendant lacked probable cause to arrest Plaintiff. *Jaegly*, 439 F.3d at 152. Defendant argues that he had probable cause to arrest Plaintiff for each of the three crimes she was charged with: (i) breach of peace in the second degree, (ii) assault in the third degree, and (iii) interfering with an officer. The Court will address each alleged crime below.

In Connecticut, a person is guilty of breach of the peace in the second degree if:

> such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or such other person's property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or

7

>abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do.

Conn. Gen. Stat. § 53a-181. The relevant provision of the statute for this action is subsection two, which penalizes one who "assaults or strikes another." It is undisputed that when Defendant arrived at Plaintiff's house, he spoke to Plaintiff's boyfriend. ECF No. 20-2 ¶ 15. During this conversation, Defendant could see drops of blood on Plaintiff's boyfriend's shirt. *Id.* ¶ 16. When Defendant asked Plaintiff's boyfriend how the blood got on his shirt, he responded that Plaintiff had struck him in the face, causing his tooth to cut the inside of his lip. *Id.* ¶ 17. Plaintiff's boyfriend then flipped up his upper lip, showing Defendant the wound. *Id.* ¶ 18. Based on these facts, Defendant determined there was probable cause to arrest Plaintiff for assaulting or striking another, constituting breach of the peace in the second degree.

No reasonable juror could conclude that Defendant lacked probable cause to arrest Plaintiff for this crime. Initially, Defendant spoke to Plaintiff's then-boyfriend who told him he had been assaulted by Plaintiff. This statement alone could have formed the basis for a finding of probable cause. *See Curley*, 268 F.3d at 69 ("when information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity"). Despite this, Defendant did not simply rely on Plaintiff's boyfriend's word; rather, the presence of blood on his shirt and the wound on his lip corroborated his statement. This evidence taken together is certainly enough to establish probable cause to arrest Plaintiff for breach of the peace by striking her then-boyfriend. *See Thomson v. Town of Manchester*, No. 3:04CV1263 (JBA), 2006 WL 8447283, at *7 (D. Conn. Aug. 21, 2006) (finding the defendant had probable cause to arrest the plaintiffs for breach of peace where complaining witness stated that the plaintiffs physically shoved her, and police discovered evidence corroborating her story). Plaintiff's

protestations that she had not struck her boyfriend do not negate Defendant's probable cause. *See id.* (plaintiffs' statement to police that they never touched the complaining witness did not eliminate probable cause).

Defendant also claims probable cause existed to arrest Plaintiff for assault in the third degree. In Connecticut, a person is guilty of assault in the third degree where:

> (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon.

Conn. Gen. Stat. § 53a-61(a). Based on the same facts Defendant learned while investigating the breach of the peace allegation, no reasonable juror could find that Defendant lacked probable cause to arrest Plaintiff for assault in the third degree. Specifically, Plaintiff's boyfriend's statement that Plaintiff had assaulted him, coupled with Defendant's observation of the blood on the boyfriend's shirt and the cut on the inside of his lip, were sufficient to warrant a person of reasonable caution to believe that an offense has been committed by the person to be arrested. *See Felix v. Aselton*, No. 3:18CV223 (JBA), 2019 WL 4565136, at *3 (D. Conn. Sept. 20, 2019) (witnesses' statement that assailant had grabbed and scratched him, coupled with injuries consistent with that statement, was enough to establish probable cause for assault). Thus, probable cause existed for Defendant to believe Plaintiff had intentionally caused physical injury to her then-boyfriend and had committed assault in the third degree.

Finally, Defendant contends that probable cause existed to arrest Plaintiff for interfering with an officer. In Connecticut, one is guilty of this offense if "such person obstructs, resists, hinders or endangers any peace officer, special policeman appointed under section 29-18b or firefighter in the performance of such peace officer's, special policeman's or firefighter's duties."

Conn. Gen. Stat. § 53a-167a(a).  Once again, a review of the undisputed facts confirms Defendant is correct.

It is undisputed that Plaintiff attempted to pull her arm away from Defendant as he attempted to place her in handcuffs.  ECF No. 20-2 ¶¶ 22–23.  The Connecticut Supreme Court has made clear that § 53a-167a defines "interfering" to include obstruction, resistance, hindrance, or endangerment—words of "broad scope."  *State v. Silva*, 939 A.2d 581, 587 (Conn. 2008).  By using those words, "the legislature intended to prohibit any act which would amount to meddling in or hampering the activities of the police in the performance of their duties."  *Id.*  Actions such as those taken by Plaintiff in this case, that make it more difficult for the police officer to handcuff a suspect, have been held to constitute an action that hinders police officers in performing their duties.  *See White v. Wortz*, 66 F. Supp. 2d 331, 334 (D. Conn. 1999) (struggling with police officers while they attempt to place handcuffs on a person under arrest constitutes probable cause under §53a-167a).  It is clear that probable cause existed to arrest the Plaintiff for interfering with an officer, and no reasonable juror could find otherwise.

In opposition, Plaintiff makes two arguments that she believes apply to all of the crimes at issue.  Neither of these arguments save her claims.  Initially, she argues that Defendant violated Conn. Gen. Stat. § 46b-38b(b) (the "Dominant Aggressor Statute") by believing what Plaintiff's boyfriend told him, instead of what Plaintiff said, and failing to conduct the investigation required by the Dominant Aggressor Statute.

The Court begins with the text of the Dominant Aggressor Statute.  The statute requires that an officer called to the scene of a domestic violence incident "evaluate each complaint separately to determine which person is the dominant aggressor."  Conn. Gen. Stat. § 46b-38b(b).  In making this determination, officers are required to "consider the need to protect victims of

10

domestic violence, whether one person acted in defense of self or a third person, the relative degree of any injury, any threats creating fear of physical injury, and any history of family violence between such persons, if such history can reasonably be obtained by the peace officer." *Id.* After considering these factors, the officer "shall arrest the person whom the officer believes to be the dominant aggressor." *Id.*

Initially, Plaintiff cites no evidence to support the proposition that Defendant did not consider the information required under the statute. Instead, the undisputed facts reveal that Defendant took the time to speak to both parties independently. He was informed by Plaintiff that her boyfriend had a history of arrests and convictions and of domestic violence against her specifically. He then spoke to Plaintiff's boyfriend, who informed him that Plaintiff had "smacked" him in the face. ECF No. 20-2 ¶ 17. This statement was corroborated by the visible blood on his shirt and the cut on the inside of his lip. After returning to speak to Plaintiff a second time, Defendant determined that, despite the history between the two parties, Plaintiff was the dominant aggressor in this situation and should be arrested. It is clear to the Court that Defendant conducted an investigation as required by the Dominant Aggressor Statute, determined that Plaintiff was the dominant aggressor in the situation, and, accordingly, arrested her.[4]

Plaintiff next argues that the Defendant knew of exculpatory evidence and hid such evidence, and that these actions essentially negate any probable cause he may have had. ECF No. 22 at 4. The exculpatory evidence Plaintiff claims Defendant hid is the fact that Plaintiff's boyfriend had a past history of domestic abuse. This argument fails because Defendant did not hide this information. Contrary to Plaintiff's assertions, Defendant's report specifically states that

---

[4] Even if this were not the case, Plaintiff has provided no case law, and the Court has located none, that failing to follow the prescriptions of the Dominant Aggressor Statute would in any way impact the Defendant's determination that probable cause to arrest the Plaintiff existed.

11

when he arrived on scene, he was informed by Plaintiff that her and her boyfriend "have a history of domestic violence." ECF No. 22-4 at 3. When questioned about this statement at oral argument, Plaintiff argued that Defendant was required by the Dominant Aggressor Statute to further investigate this statement and then provide that information to the prosecutor in the arrest report. This argument is unsupported by case law or the statute itself. There is simply no evidence to support Plaintiff's assertion that Defendant intentionally withheld exculpatory evidence and, as such, that a finding of probable cause is unsupported.

As no reasonable jury could hold Defendant lacked probable cause to arrest Plaintiff for any of the alleged offenses, Plaintiff cannot satisfy the elements of false arrest under § 1983 or malicious prosecution under Connecticut law, and Defendant's motion for summary judgment on those claims is GRANTED.

### B. Plaintiff's Claim for Excessive Force Fails as a Matter of Law

Where a plaintiff brings a claim for excessive force under 42 U.S.C. § 1983, the Court must analyze that claim "under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). The Supreme Court has long noted that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Thus, while some degree of physical force is not unreasonable, "a Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (citing *Graham*, 490 U.S. at 397). The reasonableness of an officer's actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Finally, "overly tight handcuffing can

constitute excessive force" in certain cases.  *Sharnick*, 935 F. Supp. 2d at 447.  In order to determine whether Plaintiff can prove excessive force due to overly tight handcuffs, the Court must consider "evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Id.*

In the present case, Plaintiff alleges that the actions both before and after she was handcuffed constitute excessive force.  The facts related to the arrest are undisputed.  Initially, when Defendant attempted to place Plaintiff under arrest, she "pulled away."  ECF No. 20-2 ¶ 22.  After being unable to pull her arm from Defendant's grasp, Defendant "turned her around, bent her over at the waist on a desk in the foyer and said she was under arrest for resisting."  *Id.* ¶ 23.  Defendant then walked Plaintiff to his police cruiser, placed her in the back seat, fastened the seat belt, and left the scene.  *Id.* ¶ 26.  After Plaintiff was handcuffed, she never alerted Defendant that she was uncomfortable or that the handcuffs were too tight.  *Id.* ¶ 24.  Finally, the only injuries Plaintiff alleges are soreness to her "entire body" and bruising to her wrists which lasted only one or two weeks and then resolved completely.  *Id.* ¶ 25; ECF No. 22-1 ¶ 35.

As to Defendant's conduct in applying the handcuffs, the Court finds the force used to be reasonable.  Specifically, it is clear that Defendant used only a minimal amount of force necessary to place Plaintiff in handcuffs.  Plaintiff was not taken to the ground.  Rather, she was turned and bent over.  Further, the only injury complained of as a result of the encounter, prior to handcuffing, was soreness.  Plaintiff does not allege that she saw a physician for her injuries or required other medical care.  Bending Plaintiff's body over a table to apply handcuffs after Plaintiff attempted to pull her wrists away is not an unreasonable amount of force under the circumstances.  *See Armstrong v. Martocchio*, No. 3:18 CV 580 (RMS), 2021 WL 1723243, at *11 (D. Conn. Apr. 30,

2021) (the plaintiff's claims for excessive force failed where the plaintiff remained standing throughout the encounter, the defendant only adjusted the plaintiff's positioning to allow the defendant to handcuff the plaintiff, and the only purported injuries were minor sprains or strains). After applying the handcuffs, Defendant simply walked Plaintiff to his police cruiser and brought her to the police station for processing. Such actions were certainly reasonable in light of the circumstances.

Plaintiff's argument that she was subject to unreasonable force due to excessively tight handcuffs fares no better. While Plaintiff now complains that the handcuffs were too tight, it is undisputed that she did not relay this information to Defendant at the time. Nor does Plaintiff claim she suffered any long-term injuries, or any injury at all other than soreness and slight bruising which resolved completely in less than two weeks. Such facts do not establish excessive force due to unreasonably tight handcuffs. *See Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 307 (D. Conn. 2009) (plaintiff could not show excessive force due to unreasonably tight handcuffs where the plaintiff never told arresting officers the handcuffs were too tight and suffered only relatively minor injuries). As Plaintiff has failed to establish either that Defendant's use of force in handcuffing her or that the use of the handcuffs themselves was unreasonable, Defendant's motion for summary judgment on Plaintiff's excessive force claim is GRANTED.

C. <u>Defendant is Entitled to Qualified Immunity</u>

As discussed above, Defendant committed no constitutional violation and thus the Court need go no further. In the interest of thoroughness, however, the Court also examines Defendant's qualified immunity argument. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). The qualified immunity defense has evolved to provide "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). There is "no question" the rights to be free from arrest without probable cause and excessive force during an arrest are "clearly established." *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995). Nevertheless, in a false arrest or malicious prosecution case, an officer is entitled to qualified immunity if he can show there was "arguable probable cause." *Escalera*, 361 F.3d at 743. Arguable probable cause exists where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* In a case alleging an officer used excessive force, the officer is entitled to qualified immunity where, "a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Lennon*, 66 F.3d at 425. Here, Defendant is entitled to qualified immunity on all claims.

Initially, for substantially the same reasons discussed above, it was objectively reasonable for Defendant to believe probable cause existed under these circumstances. Defendant was told by Plaintiff's boyfriend that Plaintiff struck him. This story was corroborated by the cut on the inside of his lip and the blood on his shirt. It was certainly objectively reasonable for Defendant to believe there was probable cause to arrest Plaintiff. *See Butler v. Sampognaro*, No. 3:18-CV-00545 (JAM), 2019 WL 3716595, at *3 (D. Conn. Aug. 7, 2019) (officers had arguable probable cause to arrest the plaintiff for assault after arriving on scene, seeing evidence of a fight including the injuries of the complaining witness, and such arguable probable cause was not diminished because the defendant believed the complaining witness over the plaintiff). It is even clearer that officers of reasonable competence could at least disagree over whether probable cause existed to

arrest Plaintiff. Thus, Defendant is protected by the doctrine of qualified immunity for both the false arrest and malicious prosecution claims.

As for the excessive force claim, no reasonable jury could find that "no reasonable officer would have made the same choice" as Defendant. *Lennon*, 66 F.3d at 426. After Plaintiff pulled away from Defendant, he spun her around, bent her over a table in the hallway, handcuffed her, and placed her in his police car. This limited use of force was objectively reasonable under the circumstances. The Supreme Court has been clear that not every push or shove constitutes excessive force. *Graham*, 490 U.S. at 396. There are no doubt numerous other reasonable officers who would have reacted exactly as Defendant reacted when confronted with similar facts. Thus, Defendant is entitled to qualified immunity on the excessive force claim.

### IV.     CONCLUSION

For the reasons described herein, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's complaint is dismissed in its entirety. The Clerk of Court is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 2nd day of August, 2022.

                                                  */s/ Sarala V. Nagala*
                                                  SARALA V. NAGALA
                                                  UNITED STATES DISTRICT JUDGE